H. E. BARNUM, d/b/a H & B Iron Works, Plaintiff-Respondent,

v.

A. GREENSPON PIPE COMPANY, Inc., a corporation, Defendant-Appellant.

No. 30817.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Rexford H. Caruthers, Caruthers & Montrey, Gerhard J. Petzall, St. Louis, for appellant.

Wayne B. Wright, Raymond F. McNally, Jr., McDonald, Barnard, Wright & Timm, St. Louis, for respondent.

BRADY, Commissioner.

The respondent, hereinafter referred to as the plaintiff, brought suit in St. Louis County against appellant, hereinafter referred to as the defendant, upon a contract between them for the dismantling of a large oil tank and the transportation of the pieces from Sullivan City, Texas, to Savannah, Georgia, for re-erection there. The jury returned a verdict in the amount of $2,000.00, the amount due on the contract, plus $493.00 interest and costs, and upon judgment being rendered in that amount and its timely after trial motions being overruled, defendant perfected its appeal.

The petition alleged the written contract attached thereto, entered into on June 18, 1956; that the plaintiff had performed " * * * all the acts and conditions * * *" of the contract; and that defendant had paid $2,000.00 but refuses to pay the $2,000.00 remaining due. The contract provided for the dismantling of a welded steel tank, 63' 1" by 35' high complete with steel stairway, all gages and fittings, for the sum of $2,000.00 when the dismantled tank was loaded on trucks at Sullivan City, Texas. The contract also provided, "This tank is to be taken down in first class workmanship order to be dismantled as agreed upon between you and Mr. Hardy of the Plant City Welding Company. All the plates are to be taken down carefully. None are to be thrown down, bent, mashed or flatened (sic) and to be marked for re-erection. All sheets are to be painted with a number and a diagram is to be sent to us for erection. All torch cutting is to be done in first class workmanship order suitable for welding back. Work is to start immediately and to continue with all possible speed. We will pay Two Thousand Dollars ($2,000.00) additional for hauling the above tank, stairway and fittings from Sullivan City, Texas to Savannah, Georgia. The hauling and loading is also to be done in first class workmanship order. * * *"

H. E. Barnum identified the contract and testified that work on dismantling did not begin until about ten days had passed; that after six days of work he had to put his men on another job; that he subcontracted the remainder of the work to one Etherington; that he told Etherington "* * * what I wanted done and how I wanted it done * * *" and gave him paint instructions for numbering; that he personally observed the marking of the tank and the cutting; that the dismantling was completed on the 18th or 19th of July and the steel was loaded on the trucks, that after contacting the defendant's president, he received $2,000.00 from the defendant; that he had only one long haul truck and hired two others; and that his office wrote to the defendant and after sending several wires received a letter signed by the defendant's president which was admitted into evidence and read, in its pertinent part, "We will forward the balance of your check in the next day or two. The reason why we are holding up paying you is that the contractor at Savannah is making some complaints to us about the angles and some other trouble, but he expects to have this tank completed in the next few days. We will get the balance to you at that time. Yours very truly, President, A. Greenspon, jmc." The witness further testified that he had never been paid the remaining $2,000.00.

The deposition of Etherington was then read into evidence. In that deposition Etherington testified that he completed the dismantling of the tank; that he recalled his instructions as to how to do the cutting and stated, "Yes, and I have had a world of experience cutting tanks down, and there is only one way you can cut them. A welded tank is what you call a lap weld, and you cut just above your bead the old weld, to save all the harm possible, of course. Q And did you cut this tank in that manner? A Yes, sir. Q All right. Now, during your work out there did you, as far as you can recall, damage any of the plate, or drop it, or cause any other damge (sic) to it? A None specifically, no. Not any." He further testified that Barnum had been out to oversee the work and that he marked the plates himself so they could be reassembled, and saw that the plates from the top of the tank, dismantled by Barnum's men, lying on the ground had been marked also; that he did not know if a diagram was made of the tank for re-erection or not, "* * * But you don't use a diagram for a tank like that. The iron is there, and it's iron, and it's numbered. When steel is marked, there is only one way to put it up, and that's the way it will go."

The deposition of M. F. Swain was read into evidence. He testified that he was one of the plaintiff's employees and described the manner in which they marked and cut the top of the tank; that after Etherington had about half of the remainder dismantled he went back to the site with Barnum and checked Etherington's work which "* * all looked very satisfactory to me"; that he saw no damage to any of the dismantled pieces; that he "saw to" the loading of all of the tank on the trucks; that there was no damage done to any of the pieces in the loading; that he prepared a diagram showing the markings of the tank and, after talking to Mr. Greenspon the day before the trucks left, sent the diagram, as he had been instructed by Greenspon, to an address in Savannah, Georgia.

The deposition of Randall Hodge was then read into evidence. His testimony was that he had been a truck driver ever since the early 1920's; that he drove one of the trucks that was used to transport this tank; that they loaded the tank on the trucks at Sullivan City and then unloaded it at Edinburg and reloaded it again, but that he wasn't at Sullivan City, beginning his work at Edinburg; that the steel from off the other two trucks was already on the ground when he got to Savannah and he walked over to it and looked to see if it was the "* * same steel * *" he had on his truck; and that while observing

that it was the same, he saw that it was not "* * bent or hurt."

The plaintiff's last witness was Mr. Greenspon, defendant's president, who by deposition testified that he was the chief executive of the defendant, and his duties included general operational control and supervision and the making of contracts for the company whose business was the buying and selling of steel pipe and tanks; and that defendant had purchased this tank about May of 1956. This witness further testified that while he did not know the actual date of delivery in Savannah, he knew that the plaintiff did in fact move the tank from Sullivan to Savannah; that defendant paid plaintiff the first $2,000.00 for dismantling, pursuant to the contract; and that neither he nor any employee of his company had inspected the tank since its delivery nor had they requested anyone else to make an inspection of the tank for them. Mr. Greenspon further testified that defendant brought suit against Molasses Industries, Inc. to recover the balance due to defendant on the tank. The authenticated copy of the petition in that case was then offered into evidence as Exhibit No. 5. That petition recited that the tank had been delivered to Molasses Industries, Inc. "* * * in strict accordance with spedificiations (sic) as set out in the Conditional Sales Agreement" which was a part of the petition and in which the seller, the defendant in the instant case, represented that the tank was "* * * in good and serviceable condition and free from defects." During the reading of Greenspon's deposition, defendant's counsel stated: "Let the record show defendant agrees that Plaintiff's Exhibit 1 is a true and correct contract executed by Mr. Greenspon on behalf of the Greenspon Pipe Company."

Written interrogatories had been submitted to Mr. Greenspon and certain of these, together with the answers thereto, were read into evidence. In these Greenspon admitted that the work called for in the first few paragraphs of the contract had been done by plaintiff. These two paragraphs deal with the dismantling and marking of the tank. By other answers Greenspon admitted defendant had paid nothing for moving the tank; that it was suing Molasses Industries, Inc. for the sale price; that Molasses Industries, Inc. had not paid anything to plaintiff; and that in its petition in that action defendant had alleged that the tank was in strict conformance with the specifications in the Conditional Sales Agreement. These conditions are as stated above.

Defendant offered no evidence but presented its motion for a directed verdict on the grounds that "* * * the plaintiff's evidence has failed to show compliance by the plaintiff with conditions precedent to his right to recovery as set forth in the written instrument between the parties, Plaintiff's Exhibit No. 1, introduced in this cause."

The defendant raises only one issue in this appeal. It contends the giving of Instruction No. 1 constitutes reversible error and assigns two reasons therefor. It contends the instruction submits a question of law to the jury and also that the instruction gave the jury a roving commission to find for plaintiff without "stating to the jury the issues made by the testimony."

Instruction No. 1 reads:

"The Court instructs the jury that if you find that on or about June 18, 1956, the plaintiff and the defendant executed a certain contract in writing which has been referred to in the evidence, if such is the case, and *if you further find that subsequently thereto the plaintiff performed all the material acts and conditions which were contemplated in said contract in writing,* if you so find, and if you further find that the plaintiff caused to be dismantled a certain tank mentioned in the evidence, if so, and if you further find that the plaintiff caused the same to be delivered to Savannah, Georgia, as contemplated by the aforesaid contract, if so, and if you further find

that the defendant has heretofore paid plaintiff the sum of Two Thousand ($2,000.00) Dollars for and because of said contract, if so, and if you further find that the defendant has failed and refused to pay and does now fail and refuse to pay the sum of Two Thousand ($2,000.00) Dollars or any part thereof to the plaintiff for and because of the services provided for in said contract, if so, *and if you further find that such failure of the defendant to pay the aforesaid sum of Two Thousand ($2,000.00) Dollars to the plaintiff is in violation of the promise made by defendant to the plaintiff in the aforesaid contract,* if so, then you should return a verdict for the plaintiff and against the defendant in the amount of Two Thousand ($2,000.00) Dollars with interest on said amount at 6 per cent per year from and after the time said tank was delivered at Savannah, Georgia, as contemplated in said contract, if such be the case." (Emphases supplied.)

While we agree that the instruction is inartfully drawn, we cannot agree that the giving of it constitutes reversible error. Let us return to the pleadings. Defendant's answer pleads no knowledge as to plaintiff's identity, and neither in the trial court, in its motion for new trial, nor in its brief does defendant make any point that plaintiff was not a sole proprietorship, doing business as styled by the petition. There is therefore no issue bearing upon this appeal as to this matter. The same is true of the admission in the answer of defendant's identity and corporate existence. Being admitted, it was not an issue in the trial, nor is it such on appeal. Defendant's answer denied the execution of the contract, denied the performance of the contract by the plaintiff and denied that defendant made a partial payment of the contract price. These, then, were the issues for trial as delineated by the pleadings. But even these were further simplified during the trial. With respect to the issue of the

execution of the contract, defendant's counsel admitted its execution by Greenspon " * * * on behalf of the Greenspon Pipe Company." With respect to the issue raised by defendant's denial of part payment, Greenspon admitted the payment, being asked,

"Q. Now, you paid my client the sum of two thousand dollars for dismantling the tank?

"A. We paid him two thousand dollars on account of the contract."

The only issue raised by the pleadings remaining in this case was that created by defendant's denial of the performance of the contract. It will be remembered that the petition had alleged that " * * plaintiff performed all the acts and conditions which were contemplated in said contract in writing * * *". in paragraph 4 thereof, and the answer had stated: " * * * Defendant denies each and every allegation contained in Paragraphs 3, 4 and 5 of the petition aforesaid." While this case was heard at our May docket, it evidently had been in the process of reaching us for some time. The answer was filed in October of 1957 and the case tried in November of 1960. However, Civil Rule 55.18, Missouri Rules of Civil Procedure, V.A.M.R., in effect when the case was tried, is the same as § 48 of the 1943 Code of Civil Procedure, and § 509.170, R.S.Mo.1959, V.A.M.S., in effect when the answer was filed. That rule reads:

"In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity, and when so made, the party pleading the performance or occurrence shall establish on the trial the facts showing such performance or occurrence."

It is obvious that the defendant's answer does not contain a specific denial made

with particularity as to the performance of the contract. The denial was general and there was not even an attempt at particularization. However, the plaintiff made no objection to the answer either in the form of a motion directed thereto or any oral objection at trial. Therefore, even though at the conclusion of the time for pleadings there was no issue made by these pleadings and the plaintiff then would have been entitled to a motion for judgment on the pleadings, plaintiff would not have been so entitled at the conclusion of trial had the proof served to amend defendant's answer so that the particularization required by Civil Rule 55.18, supra, could have been discerned. But in this case, the defendant offered no evidence of its own and never even cross-examined the plaintiff, nor read the cross-examinations of Swain and Etherington into evidence. The only evidence on defendant's behalf at all in this transcript was the cross-examination of the witness, Hodge, upon deposition, and that was read by the plaintiff's counsel. But this only went to whether or not Hodge knew where the steel on his truck came from, a fact amply established by Swain's testimony, or where it was put on his truck, Weslaco, Edinburg or Sullivan City, Texas, a matter of little if any bearing on the issues.

Although it does not so state in its brief, it is evidently defendant's position that its theory or particularization of how plaintiff failed to perform sufficiently appears from plaintiff's own evidence so that defendant's answer, in the form of a general denial, can be said to have been so amended as to state the particularization required by Civil Rule 55.18, supra. Barnum testified that he had received a letter from Greenspon, dated September 24, 1956, and this letter, after identification, was admitted ino evidence as Exhibit 4. In its pertinent part, set out in the transcript, the letter states:

"We will forward the balance of your check in the next day or two. The reason why we are holding up paying you is that the contractor at Savannah is making some complaints to us about the angles and some other trouble, but he expects to have this tank completed in the next few days. We will get the balance to you at that time. Yours very truly, President, A. Greenspon, jmc."

This constitutes the only support for defendant's position that plaintiff's own evidence provides the particularization required by the rule so as to supply the deficiency in its pleading. The original petition in the suit brought by the defendant against Molasses Industries, Inc. cannot do so because therein the defendant alleged that the tank was " * * * in strict accordance with spedificiations (sic) as set out in the Conditional Sales Agreement." This petition was verified by Mr. Greenspon's affidavit as president of defendant. Neither is the plaintiff's evidence as to how it cut and marked the tank sufficient for defendant's purpose. That evidence was given to show compliance by the plaintiff with the requirement in the contract that "All the plates are to be taken down carefully. None are to be thrown down, bent, mashed or flatened (sic) and to be marked for reerection. All sheets are to be painted with a number and a diagram is to be sent to us for erection. All torch cutting is to be done in first class workmanship order suitable for welding back." Since the plaintiff had the burden to show his performance in accordance with the provisions of the contract, the introduction of such testimony certainly cannot be said to provide the particularization as to how the contract was not performed as required by the rule.

The defendant is therefore left only with that portion of the letter of September 24, 1956, set out earlier herein to supply the proof that would amend the general denial of its answer by stating, specifically and with particularity, the denial of performance required by Civil Rule 55.18, supra. It does not do so. All that letter states is the reason given by Molasses Industries, Inc. as to why they hadn't paid the defendant. The letter in no way illustrates that defendant advocated a contention that it

later, by a petition verified by its president, denied existed.

It follows that there was not only a failure to raise any issue by the answer, but also a failure of proof which could be said to have amended the answer so as to provide the specific and particular denial of performance. Accordingly, the plaintiff having proved every issue properly raised by the pleadings and necessary for his case, he was entitled to a directed verdict and any error, if there be such, in the instruction could not be prejudicial.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is therefore affirmed.

ANDERSON, P. J. and WOLFE, J., concur.

RUDDY, J., not participating.